UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                      1:20-cr-10263-PBS/MBB

JIM BAUGH &
DAVID HARVILLE,

     Defendants

OPPOSITION TO DEFENDANT DAVID HARVILLE'S
MOTION TO COMPEL DISCOVERY

Defendant David Harville moves to compel the production of FBI reports of interview

("302s") for four cooperating witnesses whom the government has identified as potential trial

witnesses.  Harville also seeks the early production of *Jencks* materials, both for the four

cooperating witnesses and for four other individuals whom the government identified as

coconspirators under Local Rule 116.1(C)(1)(e).  (Docket No. 73).

Harville argues that he is entitled at this stage of the case not simply to evidence of

promises, rewards, and inducements to the cooperating witnesses, which the government has

already produced, but also to "the statements cooperating witnesses made to the Government",

because those statements "amount to *Brady* material that should not [be] bound by the timing

strictures of Jencks."  (Docket No. 74 at 4) (citing *United States v. Snell*, 899 F. Supp. 17, 21 (D.

Mass. 1995)).

The Court should deny Harville's motion because it presumes the existence of *Brady*

materials within the 302s, and that the government would be required to produce the entire 302,

and not simply any *Brady* material within it.  Harville's reliance on *Snell* is misplaced.  In that

1

case, Judge Gertner held simply that the government could not avoid producing *Brady* materials because they were contained within a witness' *Jencks* materials.  899 F. Supp. at 19 ("If the evidence at issue is conceded to be *Brady* material, then it must be turned over immediately"). *Snell* is correctly decided—the government's obligation as to *Brady* materials arises within 28 days of arraignment, or promptly thereafter upon discovering any.  But the government here is not refusing to produce *Brady* material within the 302s.  Rather, it has assessed the 302s, and it has not identified any of their contents as being discoverable under *Brady*.  It will continue to assess the 302s (and all other information in its possession) for potential *Brady* materials as the case develops, and disclose evidence in accordance with its discovery obligations.

Harville suggests that "the Government should also produce the '302' reports to the extent they contain any evidence that a prospective witness is biased or prejudiced against Defendant, or has a motive to falsify or distort his testimony." *Def. Mem. at 5*.  This argument conflates *Brady* materials with impeachment information.  As noted above, under the Local Rules, *Brady* materials must be produced within 28 days of arraignment, Local Rule 116.2(b)(1)(A), or promptly after the government becomes aware of them.  Impeachment, or *Giglio*, materials, however, are required to be produced not later than 21 days before trial.  Local Rule 116.2(c)(2)(A) ("any information that tends to cast doubt on credibility or accuracy of any witness or evidence that the government anticipates calling or offering in its case-in-chief").  The cooperating witness' statements, in the absence of *Brady* materials within them, are either *Jencks* materials, or, if they do contain impeachment information, 21-day materials.

Examples that Harville identifies and attaches to his motion, including (1) an email about the Victims having retained a lawyer and that decision's impact on the investigation, (Exh. B at USA_BH_0048160), and (2) a letter indicating that one coconspirator, Veronica Zea, tried to

evade the Natick Police Department's investigation before she became a cooperating witness,

(Exh. C), are classic impeachment materials.  They evidence these witnesses' potential bias or

incentive to lie.  Harville identifies them as exactly that in his motion, quoting Local Rule

116.2(a)(3).  Def. Mem. at 6 ("because the witness' conduct could 'cast doubt on the credibility

or accuracy of any evidence that the government anticipates using in its case in chief.')"

There may be circumstances in which impeachment information is not only favorable to

the accused, but also "material" either to guilt or to punishment, *Brady*, 373 U.S. at 87, or

"tend[s] to cast doubt … on [a] defendant's guilt as to any essential element in any count in the

Indictment…."  Local Rule 116.2(a)(1), and should therefore be promptly produced.  *See United*

*States v. Paladin*, 748 F.3d 438, 443-44 (1st Cir. 2014) (evaluating impeachment information for

materiality).  But as noted above, those circumstances are not present here.

Nor it is unfair to withhold the 302s at this early stage of the litigation.  This is not a case

in which Harville has no understanding of the cooperating witness' anticipated testimony.

Harville was originally charged on the basis of a 50-page affidavit in support of a criminal

complaint.  The government has already disclosed affidavits in support of several search

warrants that set forth the substance of information that the cooperating witnesses provided to the

government.  The government's discovery has also disclosed extensive electronic

communications of each of the four witnesses that are the focus of Harville's motion.  Three of

the four of them have pleaded guilty and spoken under oath regarding their roles in the offense.

Harville is accordingly well-equipped to both conduct pre-trial investigation and to prepare to

cross-examine these witnesses, should they testify.

As to both impeachment and *Jencks* materials, the government will abide by its

obligations under the Local Rules.  It has also represented to counsel that it is prepared to discuss

the early production of both *Giglio* and *Jencks* materials alongside other topics that typically

streamline the parties' presentation of the evidence at trial, such as stipulations regarding

authenticity, admissibility, or matters that are not in dispute.  But Harville points to no precedent,

including *Snell*, that requires the production of non-*Brady* materials outside the Local Rules'

timelines.  *See United States v. Tejeda*, 974 F.2d 210, 217 (1st Cir. 1992) ("That the Jencks Act

authorizes the government to withhold the recorded statements of a prospective government

witness until the witness completes his direct testimony, 18 U.S.C. § 3500(a); *United States v.*

*Arboleda,* 929 F.2d 858, 863 (1st Cir. 1991); *United States v. Grandmont*, 680 F.2d 867, 874 (1st

Cir. 1982), is too well recognized to require elaboration.")

For this reason, the Court should deny Harville's motion.[1]

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   */s/ Seth B. Kosto*
SETH B. KOSTO
Assistant United States Attorney

September 3, 2021

---

[1] As to the four unindicted coconspirators for whom Harville seeks early production of Jencks materials (Request No. 4), the United States does not currently anticipate calling them as witnesses, cooperating or otherwise.  Their prior statements are accordingly neither *Jencks* nor *Giglio* materials, and the government has not currently identified *Brady* evidence within them. The Court should not order their production.

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                         */s/Seth B. Kosto*
                         SETH B. KOSTO
                         Assistant United States Attorney

September 3, 2021