UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 20-cr-10263-PBS-2 |
| DAVID HARVILLE | |

**DEFENDANT DAVID HARVILLE'S OBJECTION TO AND APPEAL OF
MAGISTRATE JUDGE'S MEMORANDUM AND ORDER (DOCKET ENTRY # 122)
REGARDING MOTION TO COMPEL DISCOVERY (DOCKET ENTRY # 73)[1]**

Pursuant to Fed. R. Crim. P. 59(a), defendant David Harville (hereinafter, "Harville") hereby respectfully submits his objection to, and appeal of, the Honorable Marianne B. Bowler's (U.S.M.J.) *Memorandum And Order Re: Defendant David Harville's Motion To Compel Discovery (Docket Entry # 73); Defendant Jim Baugh's Motion To Compel Discovery (Docket Entry # 77)* (hereinafter, the "USMJ Order"). See Document No. 122.[2]

For the reasons set forth below, Harville respectfully requests that this Court modify the USMJ Order by allowing the production of "302" reports concerning cooperating government witnesses, or in the alternative, for the Court to take the within objection under advisement pending an *in camera* review of the "302" reports to determine materiality under Local Rule ("L.R.") 116.2.[3]

---

[1] Defendant Baugh, through his counsel, joins in Harville's within objection and appeal under Fed. R. Crim. P. 59(a). Baugh will be filing a separate objection in which Harville anticipates joining.

[2] For purposes of this Objection, Harville's motion to compel is referred to herein as "Harville's MTC." Harville's MTC (Document No. 73) and Baugh's motion to compel (Document No. 77) were respectively filed with the Court on August 13, 2021.

[3] Harville is not appealing the USMJ Order as to the "302" reports for the unindicted co-conspirators given the Government's representation it does not intend to call them as witnesses should the above-captioned matter proceed to trial. See USMJ Order at p. 14 ("Significantly, the government represents it does not anticipate calling as witnesses "the four unindicted coconspirators for whom Harville seeks early production of Jencks materials." (Docket Entry # 83, p. 4, n.1)." (internal footnote omitted).

### INTRODUCTION

Harville respectfully submits that his within objection concerns the pre-trial production of "302" reports concerning statements made by cooperating government witnesses, which under L.R. 116.2(a), should be subject to a different "materiality" threshold than a post-trial *Brady* claim.[4]

Defendants are charged with the following offenses under the Indictment (Document No. 33) in the above-captioned matter: *Conspiracy To Commit Stalking Through Interstate Travel And Facilities Of Interstate Commerce* (18 USC § 371); *Stalking Through Interstate Travel* (18 USC § 2261A(1)); *Stalking Through Facilities Of Interstate Commerce* (18 USC § 2261A(2)); 18 USC § 1512(b)(3) (witness tampering); and *Fabrication And Destruction Of Records In A Federal Investigation* (18 USC § 1519) (collectively herein, the "Indictment"). The Indictment alleges various actions undertaken by numerous alleged co-conspirators, which the Government attributes to Defendants as the objects, purposes, manner and means of the conspiracy. Notably, Paragraph 15 of the Indictment reads as follows (including subparagraphs (a.) through (r.) thereunder):

> 15.   Among the manner and means by which defendants BAUGH and HARVILLE conspired with Gilbert, Cooke, Popp, Stockwell, Zea, and others to carry out the conspiracy were the following:
>
> a.   Creating Twitter accounts in false names that featured ominous profile photos.
>
> b.   Using these Twitter accounts to send threatening private direct messages ("DMs") to Victim I about her, Victim 2, and the Newsletter.

---

[4]A "*Brady*" claim has three elements: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the government either willfully or inadvertently; and (3) prejudice must have resulted. See *United States v. Paladin*, 748 F.3d 438, 444 (1st Cir. 2014).

c.  Publicly posting the Victims' home address on Twitter, while suggesting in threatening messages that eBay sellers who were angry about the Newsletter's coverage were going to visit the Victims' home.

d.  Ordering unwanted and scary items and services to the Victims' home, and ordering items intended to embarrass the Victims to their neighbors' addresses.

e.  Posting online advertisements for fictitious events at the Victims' home, including sexual encounters, to encourage strangers to visit them there.

f.  Traveling to Natick to install a GPS device on the Victims' car, and to surveil the Victims in their home and in their community.

g.  Monitoring law enforcement communications to avoid detection.

h.  Establishing false cover stories for the surveillance trip, including that the coconspirators were investigating the Victims for threatening eBay's CEO.

i.  Continuing surveillance, even after the Victims had detected it, with the purpose of intimidating them.

j.  Disguising their roles in the conspiracy by harassing and intimidating the Victims using prepaid cell phones and laptops, VPN services, overseas email accounts, and prepaid debit cards purchased with cash.

k.  Offering the Victims assistance with the very harassment they were committing, to earn the Victims' good will ("the White Knight Strategy").

l.  Making false and misleading statements to NPD personnel who were investigating the threatening communications, harassing deliveries, and surveillance of the Victims.

m. Communicating by WhatsApp regarding how to harass the victims and how to respond to the NPD investigation.

n.  Creating a "dossier" of their own threats to the Victims, which they planned to show to the NPD as proof that Zea and HARVILLE were in Massachusetts investigating the harassment of the Victims (purportedly by third parties).

o.  Exchanging ideas as to how best to thwart the NPD investigation, including creating false suspects, continuing the harassing deliveries, fabricating cover stories, and intervening with any San Jose area police that the NPD contacted to further its investigation.

p.  Lying to eBay investigators who were responding to NPD requests for eBay's assistance.

q.  Exchanging ideas as to how best to thwart eBay's internal investigation.

r.  Deleting the contents of computers, cell phones, and social media accounts that evidenced the harassment and intimidation campaign and the defendants' and their coconspirators' efforts to obstruct the NPD investigation.

The Government's automatic discovery consisted of a voluminous number of electronic files produced in several installments beginning in December 2020. After the Government completed its automatic discovery, Harville served a written request for additional discovery dated June 14, 2021 under L.R. 116.3. See Document No. 60. On June 22, 2021, the Government served its written response to Harville's letter, and produced additional discovery. See Document No. 61.[5]

After reviewing the Government's responsive letters to Baugh and Harville under L.R. 116.3, the Harville MTC was filed on August 13, 2021. The parties appeared remotely by agreement on September 14, 2021 before the Court (Bowler, U.S.M.J.) for oral argument on Defendants' respective motions to compel, which were taken under advisement. See Docket Entry No. 86. On December 1, 2021, the Court (Bowler, U.S.M.J.) issued the USMJ Order (Document No. 122), which is the subject of the within objection and appeal to the presiding District Judge (Saris, J.) (as to the "302" reports for cooperating witnesses).

---

[5]On June 29, 2021, Baugh, through his counsel, served a written request for discovery under L.R. 116.3. The Government responded to Baugh in its letter of July 22, 2021, and produced additional discovery. See Document Nos. 62 and 67.

Harville respectfully submits that L.R. 116.2 is a pretrial discovery mechanism to ensure the production of exculpatory information as defined thereunder. Alternatively, the USMJ Order analyzes the Harville MTC through a strict application of "materiality" under *Brady* and related case law. Given the scope and dynamics of the conspiratorial acts alleged in the Indictment, the need for production of "302" reports for the cooperating witnesses identified in the Government's automatic discovery under L.R. 116.1(c) is compelling.

## LEGAL STANDARD

Fed. R. Crim. P. 59(a) provides, in relevant part, that this Court may modify or set aside any part of a Magistrate Judge's determination of non-dispositive matters that is "…contrary to law or clearly erroneous." Fed. R. Crim. P. 16(a)(2) concerns "Information Not Subject to Disclosure" by the Government. Rule 16(a)(2) provides that "[e]xcept as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."

Subsection (a) of 18 U.S.C.A. § 3500 ("Jencks Act") states that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." The timing for *Jencks* material is governed by Fed. R. Crim. P. 26.2 concerning witness testimony in a substantive evidentiary proceeding. See Fed. R. Crim. P. 26.2(a); J*encks v. United States*, 353 U.S. 657 (1957) (parallel citations

omitted).

Subsection (a) of L.R. 116.2 for this Court concerns "Disclosure Of Exculpatory Evidence," which reads as follows:

(a) **Definition.** Exculpatory information is information that is material and favorable to the accused and includes, but is not necessarily limited to, information that tends to:

(1) cast doubt on defendant's guilt as to any essential element in any count in the indictment or information;

(2) cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief, that might be subject to a motion to suppress or exclude, which would, if allowed, be appealable pursuant to 18 U.S.C. § 3731;

(3) cast doubt on the credibility or accuracy of any evidence that the government anticipates using in its case-in-chief; or

(4) diminish the degree of the defendant's culpability or the defendant's Offense Level under the United States Sentencing Guidelines.

<u>A</u>RGUMENT

The USMJ Order denies the Harville MTC, in substantial part, by reasoning that Harville has not established that the "302" reports sought amount to anything more than potential impeachment evidence, rather than "exculpatory" evidence. See USMJ Order, pp. 6-15. The USMJ Order discusses how "impeachment" material can only amount to "exculpatory evidence" if it creates a necessary reasonable probability "'…great enough to 'undermine confidence in the outcome of the trial." See USMJ Order, pp. 6-15. (citing, among other decisions, *United States v. Tsarnaev*, 968 F.3d 24, 74 (1st Cir. 2020); *United States v. Paladin*, 748 F.3d 438, 444 (1st Cir. 2014); *United States v. Moon*, Criminal No. 11–10223–DJC, 2012 WL 2178923, at *2 (D. Mass. June 13, 2012); *United States v. Cruz-Feliciano*, 786 F.3d 78, 87 (1st Cir. 2015)). See USMJ Order, p 8. Notably, among the factors upon which the USMJ Order relies in denying the Harville MTC

is the fifty-one (51) page affidavit filed under seal in support of the initial criminal complaint in the above-captioned matter. See Document No. 3-2 (hereinafter, "Agent Affidavit").[6] Similar to the excerpt from the Indictment embedded into the Introduction section herein above, the Agent Affidavit also presents broad allegations concerning actions attributed to various individuals.

District courts possess broad discretion in deciding motions to compel discovery. See *United States v. Castro-Ward*, 324 F. Supp. 3d 263, 264 (D.P.R. 2018). Harville respectfully submits that L.R. 116.2(2)(b)(1) contemplates a more comprehensive approach to automatic discovery of cooperating witnesses then the generalized descriptions of information provided in support of the Agent Affidavit. There are numerous references in the Agent Affidavit alleging conduct attributed to different individuals, and since the Indictment charges a conspiracy in addition to substantive counts, Harville's request for "302" reports concerning cooperating witnesses is not a request that is "…grounded in a speculative theory…" but rather material to the question of information provided by a Government witness in exchange for a cooperation agreement. See *United States v. Goris*, 876 F.3d 40, 45 (1st Cir. 2017) ("…a showing of materiality requires 'some indication' that pretrial disclosure of the information sought 'would have enabled the defendant significantly to alter the quantum of proof in his favor.'").

The USMJ Order also relies upon the Government's representation that "…[i]t will continue to assess the 302's (and all other information in its possession) for potential *Brady* materials as the case develops, and disclose evidence in accordance with its discovery obligations." See USMJ Order, p. 11 (citing Docket Entry # 83, p. 2). The USMJ Order further states as follows:

> Subject to the government's revaluation as the case progresses, this court agrees with the government that the undisclosed statements in the 302 reports "are either *Jencks* materials, or, if they do contain impeachment information, 21-day

---

[6]The 51-page Agent Affidavit remains under seal with the Court, and therefore, the version filed by the Government and docketed by the Court is incorporated into the attached **Exhibit A** by reference. See Case No. 1:20-mj-02398-MBB at Document 3-2 (Filed 06/11/20).

materials" (Docket Entry # 83, p. 2). Production of the requested material regarding cooperating witnesses as "*Brady/Giglio* material" (Docket Entry # 74, pp. 5-7) at this time is therefore denied.

Page 11 of the USMJ Order also addresses, in part, the following when discussing *United States v. Snell*, 899 F. Supp. 17 (D. Mass. 1995) cited by the Harville MTC:

> As explained in *Snell* in discussing the interplay between the Jencks Act and *Brady*, "[i]f the evidence at issue is conceded to be *Brady* material, then it must be turned over immediately… immediately." *Snell*, 899 F. Supp. at 19. The decision, however, also noted "there may be impeachment evidence that is too attenuated to fit within the *Brady* obligation" or "that is not material to the defense case, as . . . defined in the case law," although "the evidence requested by the defendants [did] not fit within that category." Id. at 23. Here, the government is not refusing to provide *Brady* material and is not conceding that the undisclosed information is *Brady* material. Rather, it reviewed the 302 reports and concluded the withheld information was not *Brady* material. (Docket Entry # 83, p. 2).

In *United States v. Bagley*, the United States Supreme Court recognized that "[i]mpeachment evidence…as well as exculpatory evidence, falls within the *Brady* rule." See *Bagley*, 473 U.S. 667, 676 (1985) citing *Giglio v. United States*, 405 U.S. 150, 154 (1972) (parallel citations omitted). *Paladin* discusses, in part, that "[t]he strength of impeachment evidence and the effect of suppression are evaluated in the context of the ***entire record*** to determine materiality." See *United States v. Paladin*, 748 F.3d 438, 444 (1st Cir. 2014) (emphasis not in original). By contrast, L.R. 116.2(a) governs the disclosure of exculpatory evidence in the context of ***pretrial discovery***. Harville, therefore, respectfully submits that the text of L.R. 116.2(a) is not synonymous with the reasoning underlying the *Brady* claim addressed in *Paladin*.

*Paladin* analyzes the prejudice which may have resulted from the lack of disclosure, rather than the issue raised in the Harville MTC—which is that the production of the "302" reports (concerning cooperating government witnesses) is consistent with the requirements of L.R.

116.2(a).[7] Although the voluntary early production of *Jencks* material has been considered "a salutary practice," courts have ordered early production in the interest of fairness, efficiency and the avoidance of surprise. <u>See</u> *Snell*, 899 F. at 24 (D. Mass. 1995) citing *United States v. Campagnuolo,* 592 F.2d 852, 859 n. 3 (5th Cir.1979); *United States v. Murphy,* 569 F.2d 771, 773 n. 5 (3d Cir.), *cert. denied,* 435 U.S. 955, 98 S. Ct. 1588, 55 L.Ed.2d 807 (1978); *United States v. Hubbard,* 474 F. Supp. 64 (D.D.C.1979). Moreover, the Court has the inherent power to protect a defendant's Fifth and Sixth Amendment rights to due process, confrontation and effective assistance of counsel. Notably, Harville previously cited to *United States v. Snell*, 899 F. Supp. 17, 24 (D. Mass. 1995) for the proposition that the nature and circumstances of a given case can warrant a court's determination of whether *Jencks* material may be inextricably tied to *Brady/Giglio* discovery. <u>See</u> Document No. 74 at p. 3 (Memorandum in Support of Harville MTC).

Harville's request for the "302" reports concerning cooperating witnesses is not far-fetched. The Court should respectfully analyze the discoverability of the "302" reports for cooperating witnesses as contemplated under L.R. 116.2(a), and whether the scope of the Local Rule is at odds with the retrospective "materiality" standard under *Brady* (versus the prospective nature of L.R. 116.2). The Government's disclosure of cooperation agreements under L.R. 116.2(a) lacks utility if statements made to the Government that result in a witness receiving cooperation status are reduced to a "302" report that remains withheld.

---

[7]The following first paragraph on Page 5 of the memorandum in support of the Harville MTC (Document No. 74) states as follows:

> Defendant is narrowing **Request No. 2** to those individuals the Government identified in its initial discovery disclosure letter of December 21, 2020, a copy of which is attached hereto at **Exhibit B**, who are cooperating witnesses. Local Rule 116.2 of this Court classifies such information as exculpatory evidence because cooperation agreements tied to plea agreements amount to a promise, reward or inducement. Therefore, the reconciliation of timing between the immediacy of *Brady/Giglio* material, versus the later disclosure of *Jenks* material also applies to **Request No. 4** of Defendant's June 14, 2021 discovery letter (Document No. 60).

If a cooperation agreement must be disclosed under L.R. 116.2(b)(1)(C), it would respectfully seem incongruous to find that the very witness statements provided to the Government that secured cooperation status does not amount to a *per se* showing of "materiality" under L.R. 116.2(a).

<u>C</u><u>ONCLUSION</u>

For the foregoing reasons, Harville respectfully requests that this Honorable Court sustain the within objection as to the "302" reports for cooperating witnesses, or in the alternative, take the matter under advisement pending an *in camera* review on materiality under L.R. 116.2.

Respectfully submitted,

**DEFENDANT DAVID HARVILLE**

By his attorneys,

Dated: January 5, 2022

/s/ *Daniel K. Gelb*
_____
Daniel K. Gelb, Esquire
BBO# 659703
**GELB & GELB LLP**
900 Cummings Center, Suite 207-V
Beverly, Massachusetts 01915
Telephone (617) 345-0010
Fax (617) 345-0009
dgelb@gelbgelb.com

Jonathan D. McDougall, Esquire
**THE LAW OFFICE OF**
**JONATHAN D. MCDOUGALL**
1640 Laurel Street
San Carlos, CA 94070
Telephone (650) 594-4200
Fax (650) 594-4205
jmcdougall.law@gmail.com
***(appearing pro hac vice)***

10

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on January 5, 2022 this document was electronically filed with the Clerk of Court for the United States District Court for the District of Massachusetts using the CM/ECF system, which will send a notice of electronic filing (NEF) to all registered participants in the above-captioned action.

 /s/ *Daniel K. Gelb*
Daniel K. Gelb, Esquire

# EXHIBIT A

## See Case No. 1:20-mj-02398-MBB

## Document 3-2 (Filed 06/11/20)

## **SEALED**