UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIM BAUGH &<br>DAVID HARVILLE,<br><br>Defendants | 1:20-cr-10263-PBS/MBB |

OPPOSITION OF THE UNITED STATES TO
DEFENDANT HARVILLE'S OBJECTION TO
ORDER DENYING MOTION TO COMPEL DISCOVERY

Defendant David Harville objects to an order denying his motion to compel discovery. He unsuccessfully sought the early production of FBI reports of interview ("302s") of four cooperating witnesses who are expected to testify at trial. The government has already identified promises, rewards, and inducements to these witnesses in the form of their cooperation and proffer agreements, as required by Local Rule 116(b)(1)(C). But Harville argues that the contents of the interview reports are immediately discoverable as *Brady* material "*per se*"—not because of what the witnesses said in the interviews, but simply because they are cooperating with the government's investigation. (Docket No. 147 at 10).

In denying Harville's motion, Judge Bowler correctly held that "undisclosed statements in the 302 reports 'are either *Jencks* materials, or, if they do contain impeachment information, 21-day materials.'". (Docket No. 122 at 11). The Court should reject Harville's appeal because it presumes the existence of *Brady* materials within the 302s, and that the government would be required to produce the entire 302, and not simply any *Brady* material within it.

1

If the 302s do *not* contain *Brady* materials—and the United States has identified none to date in them—the obligation to produce them arises under only *Giglio* and the Jencks Act. To be sure, the United States will produce these 302s <u>90 days before trial</u>—well in advance of what the Local Rules require—but the Court cannot order the production of 302s simply because they recount the statements of cooperating witnesses.

Harville's reliance on *United States v. Snell*, 889 F. Supp. 17 (D. Mass. 1995), is misplaced. In that case, Judge Gertner held simply that the government could not avoid producing *Brady* materials because they were contained within a witness' *Jencks* materials. 899 F. Supp. at 19 ("If the evidence at issue is conceded to be *Brady* material, then it must be turned over immediately"). *Snell* is correctly decided—the government's obligation as to *Brady* materials arises within 28 days of arraignment, or promptly thereafter upon discovering any. But the government here is not refusing to produce *Brady* material within the 302s. Rather, it has assessed the 302s, and it has not identified any of their contents as being discoverable under *Brady*. It will continue to assess the 302s (and all other information in its possession) for potential *Brady* materials as the case develops, and disclose evidence in accordance with its discovery obligations.

There may be circumstances in which impeachment information is not only favorable to the accused, but also "material" either to guilt or to punishment, *Brady*, 373 U.S. at 87, or "tend[s] to cast doubt … on [a] defendant's guilt as to any essential element in any count in the Indictment….", and should therefore be promptly produced. *See United States v. Paladin*, 748 F.3d 438, 443-44 (1st Cir. 2014) (evaluating impeachment information for materiality). But as noted above, those circumstances are not present here. "*Brady* does not require the government to record and provide to defense counsel verbatim accounts of everything that government

2

witnesses or prospective government witness ever said or to provide everything that may be of interest or even useful to defense counsel." *United States v. Urciuoli*, 470 F. Supp. 2d 109, 113 (D.R.I. 2007).

Although the government sometimes voluntarily produces *Jencks* or *Giglio* materials during automatic discovery, it is hesitant to do so in a case that involves both retaliatory harassment and repeated efforts to obstruct justice, and where the Court has yet to set a trial date. Moreover, this is hardly a case where Harville has no understanding of the cooperating witness' anticipated testimony. The government has already produced hundreds of pages of affidavits that set forth the substance of information that the cooperating witnesses provided to the government. These documents highlight what Harville and the witnesses that are the focus of Harville's motion said, in writing, during the harassment campaign. Three of the four of them have pleaded guilty and spoken under oath regarding their roles in the offense. Harville is accordingly well-equipped to both conduct pre-trial investigation and to prepare to cross-examine these witnesses, should they testify.

As noted above, the government will exceed its obligations under the Local Rules by producing the 302s substantially before trial. *See United States v. Cadden,* 2015 WL 13683816, at *1 (D. Mass. Dec. 4, 2015) ("While the government may disclose Jencks Act material earlier than the close of a witness's testimony, it does so voluntarily."). But Harville points to no precedent, including *Snell*, that requires the production of non-*Brady* materials outside the Local Rules' timelines. *See United States v. Tejeda*, 974 F.2d 210, 217 (1st Cir. 1992) ("That the Jencks Act authorizes the government to withhold the recorded statements of a prospective government witness until the witness completes his direct testimony, … , is too well recognized to require elaboration.") (internal citations omitted); *see also United States v. Munoz*, 2020 WL

3

4484510, *2 (N.D. Ga. Feb. 11, 2020) (refusing to order early production of *Giglio* materials in a case where "witness credibility will be of paramount importance" because "that is typical of many criminal proceedings").

Nor has Harville identified any reason for the Court to take the unusual step of reviewing the 302s in camera for *Brady* material. While courts in some instances may conduct an *in camera* review of disputed materials, a defendant must first make "some showing that the materials in question could contain favorable, material evidence." *United States v. Prochilo*, 629 F.3d 264, 268-269 (1st Cir. 2011). "This showing cannot consist of mere speculation. … Rather, the defendant should be able to articulate with some specificity what evidence he hopes to find in the requested materials, why he thinks the materials contain this evidence, and finally, why this evidence would be both favorable to him and material." *Prochilo*, 629 F.3d at 269. Because Harville has offered no justification at all for *in camera* review, *see* Docket No. 147 at 10, the Court should refuse to engage in it.

For these reasons, the Court should affirm Judge Bowler's decision denying Harville's motion to compel.

        Respectfully submitted,

        RACHAEL S. ROLLINS
        United States Attorney

By:   */s/ Seth B. Kosto*
      SETH B. KOSTO
      Assistant United States Attorney

January 21, 2022

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                            */s/Seth B. Kosto*
                                            SETH B. KOSTO
                                            Assistant United States Attorney

January 21, 2022