```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                   )
UNITED STATES OF AMERICA,          )
                                   )
                                   )    Criminal Action
v.                                 )    No. 20-10263-PBS
                                   )
JIM BAUGH, and                     )
DAVID HARVILLE,                    )
                                   )
                 Defendants.       )
_____)
```

## MEMORANDUM AND ORDER

February 4, 2022

Saris, D.J.

### INTRODUCTION

Former eBay employees Jim Baugh and David Harville were indicted on charges arising from their alleged harassment of Victim 1 and Victim 2, a married couple who circulated an online newsletter that criticized eBay. The indictment contains 15 counts:

- Count 1: Conspiracy to Commit Stalking Through Interstate Travel and Through Facilities of Interstate Commerce (18 U.S.C. § 371);

- Counts 2-5: Stalking Through Interstate Travel (18 U.S.C. § 2261A(1)(B));

- Counts 6-9: Stalking Through Facilities of Interstate Commerce (18 U.S.C. § 2261A(2)(B));

1

- Counts 10-12: Witness Tampering (18 U.S.C. § 1512(b)(3)); and

- Counts 13-15: Falsification or Destruction of Documents (18 U.S.C. § 1519).

Harville now moves to dismiss the indictment, arguing (1) that Counts 1, 4, 5, 8, and 9 are duplicitous and multiplicitous, see Dkt. 117 at 6–8; and (2) that Counts 8 and 9 should be dismissed for failure to state a course of conduct, see id. at 8–9.[1] After a hearing, the Court **DENIES** Harville's motion to dismiss on these grounds.

## FACTUAL BACKGROUND

The indictment alleges the following facts.

Baugh was the Senior Director of Safety and Security at eBay, and Harville was the Director of Global Resiliency. In 2019, eBay's senior leadership became aware of an online newsletter (the "Newsletter") that it perceived as a threat to eBay's image. From August 5, 2019 through September 6, 2019, Baugh, Harville, and five other eBay employees[2] began harassing Victim 1 and Victim 2,

---

[1] The Court will address the Defendants' motions to dismiss Counts 10-14 of the indictment and the parties' discovery disputes in separate opinions.

[2] The five employees were Stephanie Popp, eBay's Senior Manager of Global Intelligence; Stephanie Stockwell, the manager of eBay's Global Intelligence Center ("GIC"); Veronica Zea, an eBay contractor who worked as an intelligence analyst in the GIC; Brian Gilbert, a Senior Manager of Special Operations for eBay's Global

a married couple living in Natick, Massachusetts who disseminated the Newsletter.  Their goals were to distract the Victims from publishing the Newsletter, to change how the Victims covered eBay in the Newsletter, and to gather information to discredit the Victims.

The intimidation began with a series of online messages and home deliveries.  On August 6, 2019, Popp created a Twitter profile named "@Tue_Elei" with a skeleton mask as its avatar.  Popp used the account to send a direct message to Victim 1's Twitter account, depicting @Tue_Elei as an angry eBay user who wrote, "whats your problem w/ebay? You know that's how we pay rent."  Dkt. 33 ¶ 16e. When Victim 1 did not respond, Popp used the @Tue_Elei account to send her a series of obscene messages on August 9, 2019 that included, "I guess im goin to have to get ur attention another way bitch . . ."  Id. ¶ 16g.  The conspirators then began sending harassing deliveries to the Victims' home on August 9-10, 2019, including live spiders, fly larvae, and a Halloween pig mask.  They also purchased subscriptions for pornographic magazines in Victim 2's name and had them delivered to the Victims' neighbors.  On August 10, 2019, Victim 1 received a direct Twitter message from

---

Security Team; and Philip Cooke, a supervisor of security operations for eBay's Global Security Team.

the @Tue_Elei account saying, "DO I HAVE UR ATTENION NOW????"  Id. ¶ 16l.

On August 11, 2019, Baugh directed Harville to travel with him to Boston for an "op" targeting the Victims, writing to Harville that "I won't send the bosses texts, but I've been ordered to find and destroy."  Id. ¶ 16n-o.  Harville replied, "Copy.  Totally black[.]  I'm deleting this now."  Id. ¶ 16o.  Before traveling to Boston, on August 12, 2019, Baugh directed his co-conspirators to increase the harassing deliveries and messages.  From August 12-14, the group sent the Victims a book about grieving the loss of a spouse, a funeral wreath, and live cockroaches.  The @Tue_Elei account posted angry public messages to Victim 1's Twitter account, including "UR stupid idkiot comments r pushin buyers away from ebay and hurtin families!!! STOP IT NOW!!" and "[name of Victim 1] wen u hurt our bizness u hurt our familys . . . Ppl will do ANYTHING 2 protect family!!!!"  Id. ¶¶ 16s-v.

On August 14, 2019, Baugh, Harville, Zea, Gilbert, and Popp met to plan the trip to Boston to surveil the Victims and install a GPS tracking device on their car.  Baugh ordered the deliveries to stop to prevent interference with the operation.  On August 15, 2019, Baugh, Harville, and Zea flew to Boston.  That same day, Harville visited a website that could be used to monitor the Natick Police Department's ("NPD") live audio feed.  Baugh, Harville,

4

Popp, and Zea dialed into a conference call to communicate with each other and to monitor the NPD dispatch. Meanwhile, Baugh directed Stockwell to prepare a "Person of Interest" report ("POI Report") falsely listing the Victims as eBay's top persons of interest and told Stockwell, "In the narrative I need you to write that they have made direct threats to ebay, [eBay's CEO], and our employees (make it up.)" Id. ¶ 16dd.

Baugh, Harville, and Zea drove to the Victims' home, but were unable to install the GPS device because the Victims' car was locked in their garage. On August 16, 2019, Harville purchased tools for the purpose of breaking into the Victims' garage.[3] Baugh, Harville, and Zea continued their surveillance and followed in a rental car as Victim 2 drove around Natick, stopping when they came to believe he had spotted them. Baugh returned the rental car.

Baugh then directed that the harassing deliveries resume. On August 17, 2019, the conspirators ordered a pizza to be delivered to the Victims' home at 4:30am for payment upon delivery. The @Tue_Elei account posted Victim 1's name, age, address, and telephone number publicly and continued sending threatening and obscene messages taking credit for the deliveries. Some of the conspirators also posted an advertisement on Craigslist claiming

---

[3] The indictment does not allege that Harville or anyone else ever broke into the Victims' garage.

to be a married couple seeking sexual partners at the Victims' home address. Later on August 17, 2019, Harville returned to California and was replaced in Boston by Popp.

On August 18, 2019, Victim 2 was able to take a picture of the surveillance team's license plate as Baugh, Popp, and Zea followed him around Natick. The conspirators began taking steps to cover their tracks. Baugh forwarded Gilbert the POI Report and wrote in a WhatsApp message, "Just sent poi doc with [Victims] included. I had GIC send this to me last week in case we got stopped..that way would at least have something to show to PD." Id. ¶ 16ss. Baugh and Zea lied to an NPD detective who came to their hotel and attempted to call Zea; as Baugh described the encounter in a text message, "Detective called her cell.  I answered just now as her husband and played dumb." Id. ¶ 16ww. The conspirators also began compiling dossiers on the Victims that they could give to the NPD to make the Victims "look crazy." Id. ¶ 16xx. On August 21, 2019, to confuse an NPD investigation into the use of a prepaid debit card to purchase the pizzas that had been delivered to the Victims, Baugh and Popp instructed Stockwell to create another list of eBay "persons of interest" in the San Francisco area to deflect attention from Zea, who had purchased the card. Baugh and Popp forwarded the document Stockwell created,

6

named "Bay Area POIs_August 2019.docx" to Gilbert for use in a meeting with the NPD.

On August 22, 2019, Gilbert met with NPD officers and falsely told them that Zea and Harville had come to Boston to attend a conference, that Popp was Zea's supervisor, and that Zea had driven to Natick on her own to conduct a Person of Interest investigation regarding the victims.  Harville and Baugh each also told similar falsehoods to eBay's internal investigators.  For example, on August 23, 2019, Harville told them that he had travelled to Boston to attend a conference, that he had not gone to Natick, and that he had not interacted with the Victims or the NPD.  That same day, Baugh told eBay's internal investigators that his team was not responsible for the messages and deliveries and that they had gone to Natick to investigate the threats against the Victims.  On August 26, 2019, Harville falsely told eBay investigators that he did not know whether Zea had gone to Natick and that he had not worked on a matter involving the Victims.  Beginning on August 26, 2019 Baugh, Harville, and others deleted and attempted to delete data from their mobile phones that contained evidence of their alleged wrongdoing, including WhatsApp messages.  On August 30, 2019, after receiving an email from an eBay investigator directing him to preserve relevant information and to turn in his eBay-issued cell phone, Harville messaged Baugh, asking, "Want me wipe it[?]"  That day, Harville turned in his eBay-issued phone, from

which significant data related to his trip to Natick had been deleted.

## DISCUSSION

### I. Legal Standard

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment need not say much to satisfy these requirements—it need only outline 'the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense.'" United States v. Stepanets, 879 F.3d 367, 372 (1st Cir. 2018) (quoting United States v. Guerrier, 669 F.3d 1, 3 (1st Cir. 2011)). In evaluating a motion to dismiss, a court must assume that an indictment's allegations are true. See Guerrier, 669 F.3d at 3-4.

### II. Analysis

#### A. Duplicity and Multiplicity

Duplicity is "the joining in a single count of two or more distinct and separate offenses." United States v. Verrecchia, 196 F.3d 294, 297 (1st Cir. 1999) (quoting United States v. Martinez Canas, 595 F.2d 73, 78 (1st Cir. 1979)); see also Fed. R. Crim. P. 12(b)(3)(B)(i). The prohibition on duplicity reflects two concerns: "(1) that a criminal defendant facing . . . an indictment might not know which charge to prepare to defend against[,] and

(2) that a jury could find a defendant guilty without actually reaching unanimity." United States v. Sidoo, 471 F. Supp. 3d. 369, 376–77 (D. Mass. 2020) (internal punctuation omitted) (citing United States v. Prieto, 812 F.3d 6, 11 (1st Cir. 2016) (holding a mail fraud count based on 86 distinct transactions was not duplicitous because the government charged the defendant with a single overarching scheme)).

Multiplicity occurs "when the government charges a defendant twice for what is essentially a single crime." United States v. Chiaradio, 684 F.3d 265, 272 (1st Cir. 2012); see also Fed. R. Crim. P. 12(b)(3)(B)(ii). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." United States v. Serino, 835 F.2d 924, 930 (1st Cir. 1987) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). Where multiple acts are charged as separate violations of the same statute, "an inquiring court must determine whether the facts undergirding each count can be treated as a distinct unit of prosecution." United States v. Pires, 642 F.3d 1, 15 (1st Cir. 2011); see also United States v. Gordon, 875 F.3d 26, 37 (1st Cir. 2017) (holding an indictment charging a defendant with five murder-for-hire counts based on each use of facilities

9

of interstate commerce was multiplicitous because the correct unit of prosecution was each plot to murder a single individual).

  1.  *The Stalking Counts Are Not Duplicitous*

Harville first argues that Counts 4, 5, 8, and 9 are each duplicitous. The below table summarizes the relevant statute, charged conduct, and Victim for each Count:

| Count | Statute | Charge | Victim |
|---|---|---|---|
| 4 | 18 U.S.C. § 2261A(1)(B) | Stalking Through Interstate Travel | Victim 1 |
| 5 | 18 U.S.C. § 2261A(1)(B) | Stalking Through Interstate Travel | Victim 2 |
| 8 | 18 U.S.C. § 2261A(2)(B) | Stalking Through Facilities of Interstate Commerce | Victim 1 |
| 9 | 18 U.S.C. § 2261A(2)(B) | Stalking Through Facilities of Interstate Commerce | Victim 2 |

As to Counts 4 and 5, 18 U.S.C. § 2261A(1)(B) establishes criminal liability for anyone who

> travels in interstate or foreign commerce or is present within the special maritime and territorial jurisdiction of the United States, or enters or leaves Indian country, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that . . . causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person [or an immediate family member of that person as defined in 18 U.S.C. § 115(c)(2)].

Id.; see also 18 U.S.C. § 115(c)(2) (defining an "immediate family member" to include one's spouse).

As to Counts 8 and 9, 18 U.S.C. § 2261A(2)(B) punishes anyone who

> with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that . . . causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person [or an immediate family member of that person as defined in 18 U.S.C. § 115(c)(2)].

Id. Harville argues that Counts 4, 5, 8, and 9 should be dismissed as duplicitous because different jurors could choose to convict him either for (1) conduct that would be reasonably expected to cause substantial emotional distress to the Victim who is the named Victim for each Count, or (2) conduct that would be reasonably expected to cause substantial emotional distress to the Victim who is not the object of a given Count because the Victims are immediate family members of each other within the definition of Section 115.  This argument overlooks the language of the indictment, which states that Harville's alleged harassing conduct "would be reasonably expected to cause substantial emotional distress to" Victim 1 for Counts 4 and 8 and Victim 2 for Counts 5 and 9.  Dkt. 33 ¶¶ 22, 26.  Moreover, any confusion could be remedied by an instruction to the jury that it can only convict based on a finding that the Victim listed for each Count was the object of the charged conduct.  See United States v. Luthra, No.

11

15-cr-30032, 2017 WL 11447192, at *2 (D. Mass. Sept. 26, 2017) ("[D]uplicitous counts are generally cured by jury charges requiring unanimous agreement on underlying offense(s) or by government election between different offenses contained in a single count."). Dismissal is not warranted based on any purported duplicity in Counts 4, 5, 8, and 9.

*2. The Stalking Counts Are Not Multiplicitous*

The government may bring separate charges corresponding to each Victim of Harville's alleged violations of 18 U.S.C. §§ 2261A(1) and 2261A(2), both of which punish traveling in or using the facilities of interstate commerce "with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person." Id. (emphasis added). This language means that the appropriate unit of prosecution for both federal stalking charges is the victim. See United States v. Conlan, 786 F.3d 380, 387 (5th Cir. 2015) ("The plain language of § 2261A(2) unambiguously contemplates that the unit of prosecution is the targeted individual.") (cleaned up); United States v. Shrader, 675 F.3d 300, 313 (4th Cir. 2012) (Section 2261A "defines the defendant's crime—and therefore the unit of prosecution—in terms of his intent to strike fear in a particular individual."). Because the proper unit of prosecution is the victim, the government can bring

separate charges related to Harville's alleged stalking of each Victim 1 and Victim 2 without raising multiplicity concerns.

Nor is there any merit to Harville's argument that Stalking Through Interstate Travel charges and Stalking Through Facilities of Interstate Commerce charges are inherently multiplicitous. The government will need to prove facts for each violation that it need not prove for the other. To prove that Harville violated § 2261A(1)(B), the government will need to demonstrate that he traveled in interstate commerce. To prove that he violated § 2261A(2)(B), the government will need to show that Harville engaged in a course of conduct involving use of the mail, electronic communication, or other facilities of interstate commerce. These separate requirements evince Congress's intent to create two statutory schemes that the government may prosecute separately. The Court will not dismiss the stalking charges on multiplicity or duplicity grounds.

### 3.   *The Conspiracy Charge Is Not Duplicitous*

Count 1, which charges Baugh and Harville with conspiracy to violate both 18 U.S.C. §§ 2261A(1)(B) and 2261A(2)(B) in a single count, is not duplicitous. In Braverman v. United States, the Supreme Court held that a conspiracy charge supported by multiple

underlying offenses is not duplicitous. See 317 U.S. 49, 54 (1942). The Court wrote,

> The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects. A conspiracy is not the commission of the crime which it contemplates, and neither violates nor arises under the statute whose violation is its object. Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes. The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute.

Id. (cleaned up). Braverman remains good law. See United States v. Vilar, 729 F.3d 62, 79 (2d Cir. 2013) (quoting Braverman, 317 U.S. at 54) ("It has been established for at least seventy years that '[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime, and that is one, however diverse its objects.'"); United States v. Marshall, 332 F.3d 254, 262 (4th Cir. 2003) ("The Supreme Court has expressly rejected the contention that such a count, containing allegations of a single conspiracy to commit two or more separate crimes, is duplicitous."); United States v. Smith, 891 F.2d 703, 713 (9th Cir. 1989) ("[W]here conspiracy is the charge, the established rule is that a charge of conspiracy to commit more than one offense may be included in a single count without violating the general rule against duplicity"). Harville's only authority to the contrary is an Eighth Circuit

case that pre-dates Braverman, see Marx v. United States, 86 F.2d 245, 249 (8th Cir. 1936), and is of no relevance.

Count 1 of the indictment is not duplicitous because the government may charge a single conspiracy count based on an agreement to violate different stalking provisions.

**B.   Course of Conduct**

Harville argues that Counts 8 and 9 of the indictment fail to state the "course of conduct" necessary to sustain a charge under 18 U.S.C. § 2261A(2)(B).  A course of conduct is "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).  The indictment sufficiently asserts that Harville engaged in a course of conduct.

"An indictment that tracks the language of the underlying statute generally suffices" as long as "the excerpted statutory language sets out all of the elements of the offense without material uncertainty."  United States v. Troy, 618 F.3d 27, 34 (1st Cir. 2010).  "In other words, the indictment may use the statutory language to describe the offense, but it must also be accompanied by such a statement of facts and circumstances as to inform the accused of the specific offense with which he is charged."  United States v. Savarese, 686 F.3d 1, 6 (1st Cir. 2012).

Here, the indictment tracks the language of § 2261A(2)(B) and includes a robust statement of facts that informs Harville of the conduct underlying Counts 8 and 9. The indictment states,

> From on or about August 15, 2019 through August 17, 2019, in the District of Massachusetts and elsewhere, the defendant, DAVID HARVILLE, did, with the intent to harass, intimidate, and place under surveillance with the intent to harass and intimidate another person, use the mail, an interactive computer service, electronic computer service, electronic communication system of interstate commerce, and other facilities of interstate commerce to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to the persons listed below [i.e., Victim 1 for Count 8 and Victim 2 for Count 9].

Dkt. 33 ¶ 26.

Paragraph 16 of the indictment recites several facts that amount to a course of conduct, describing how Harville visited a website to monitor the NPD's live audio feed, drove to the Victims' home and attempted to install a GPS tracking device on their car, dialed into a conference line to communicate with his co-conspirators in furtherance of the stalking scheme, purchased tools at a hardware store to attempt to break into the Victims' garage, and used a rental car to follow Victim 2. This more than suffices to state a course of conduct. Given the indictment's level of detail, Harville doth protest too much that "it is impossible from the four corners of Count 8 and Count 9 to delineate the specific acts that amount to a 'course of conduct.'" Dkt. 117 at 9. Harville does not support his apparent assertion

16

that facts set forth in earlier parts of the indictment do not count and, in any case, the four corners of Counts 8 and 9 track the statutory language and give Harville notice of the charges against him.  The indictment states a course of conduct.

### ORDER

Harville's motion to dismiss the indictment on grounds of duplicity, multiplicity, and failure to state a course of conduct (Dkt. 116) is **DENIED**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge